IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

W.B. b/n/f JASON B. AND          §
JENNIFER B.,                     §
                                 §
          Plaintiff,             §
                                 §
v.                               §        CIVIL ACTION NO. H:12-0083
                                 §
HOUSTON INDEPENDENT SCHOOL       §
DISTRICT,                        §
                                 §
          Defendant.             §

MEMORANDUM AND ORDER

Pending are Defendant Houston Independent School District's Motion for Summary Judgment (Document No. 10) and Plaintiff W.B. b/n/f Jason B. and Jennifer B.'s ("Plaintiff") Motion for Summary Judgment (Document No. 11).[1]   After reviewing the motions, responses, the administrative record, and the applicable law, the Court concludes as follows.

I.   Background

W.B. is a child with moderate to severe autism and a speech impairment, who attended second grade in the Houston Independent

---

[1] Although the cross motions are styled as motions for summary judgment, they are in fact more akin to an appeal from an administrative decision on a stipulated record. *See* Beth B. v. Van Clay, 282 F.3d 493, 496 n.2 (7th Cir. 2002), *cert. denied*, 123 S.Ct. 412 (2002); D.B. ex rel C.B. v. Houston Indep. Sch. Dist., No. Civ. A. H-06-354, 2007 WL 2947443, at *1 (S.D. Tex. Sept. 29, 2007) (Harmon, J.).

School District ("HISD") for one year.[2]  W.B.'s parents bring this suit on his behalf to appeal the Special Education Hearing Officer's decision denying their request for compensatory educational services based on the contention that W.B. was denied a "free appropriate public education."  W.B.'s parents argue that W.B.'s individualized education plan ("IEP") was not implemented for the first three quarters of the school year.  This suit is brought under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et. seq.*

W.B. and his family moved to Houston in the summer of 2010 so that his mother could undergo cancer treatment.[3]  Prior to the move, W.B. attended a Special Day Class for Children with Autism at Barron Park Elementary School in Palo Alto, California from the summer of 2009 until the move to Houston the following year.[4]  The move to Houston was not planned far in advance, and the Palo Alto Unified School District (the "Palo Alto District") had already prepared an IEP for W.B. for the upcoming 2010-11 school year.[5]  The IEP was based on a triennial reevaluation report prepared by the Palo Alto District, which was developed based on evaluations

---

[2] AR at 168, 1189.  "AR" refers to the administrative record. At the time of the administrative hearing, W.B. was nine years old.

[3] AR at 1025.

[4] AR at 423.

[5] AR at 1030-31.

occurring throughout the year and in May 2010, in particular.[6]  The Palo Alto District's IEP identified specific areas of need, W.B.'s current skill on a particular task related to that area of need, a measurable annual goal for him to progress toward, and short-term objectives toward that goal to be reached by October 2010, February 2011, and May 2011.[7]  For example, one identified area of need was math.  There are several goals and objectives listed in this area of need; one baseline states that "[W.B] is able to add two digit numbers with regrouping, and subtract two digit numbers without regrouping."[8]  The annual goal is that by May 18, 2011, "[W.B] will add and subtract three digit numbers with regrouping with 80% accuracy as measured by data collection."[9]  The October short-term objective is that W.B. can add three-digit numbers with regrouping with 80% accuracy, and the February short-term objective is that W.B. will subtract two-digit numbers with regrouping with 80% accuracy.[10]  In addition to math, other identified areas of need are behavior, social skills, reading, attending skills, self-help, written language, expressive language, and gross motor.  The IEP states that in addition to attending the special day class, which

---

[6] AR at 472, 479.

[7] AR at 560-66.

[8] AR at 563.

[9] Id.

[10] Id.

is a group setting, he will have language and speech services for thirty minutes once a week in a one-on-one setting and once a week for thirty minutes in a group setting, occupational therapy for sixty minutes once a week in a group setting, behavior intervention services at home, and behavior intervention services at school for ninety minutes once a week in a one on one setting.[11]  The IEP does not mention any academic class time spent in general education classrooms; it does state that "[W.B.] requires a highly structured teaching environment, however he benefits from weekly mainstreaming with general education peers for non academic subjects."[12]  The IEP also finds W.B. eligible for Extended School Year services, and allocates classroom time, as well as occupational therapy once a week for thirty minutes in a group setting, language and speech once a week for thirty minutes in a group setting, and behavior intervention services at home for those Extended School Year services.[13]

Upon W.B.'s move to Houston, HISD immediately convened an Administrative, Review, and Dismissal Committee (the "ARD Committee" or the "Committee"), which held its first meeting on

---

[11] AR at 567-68.

[12] AR at 567.  The Notes also state that "Mainstreaming during academics was difficult for him this year; mainstreaming was music, peer reading, library, and some math games."  AR at 572.

[13] AR at 569.

4

June 22, 2010.[14]  Both of W.B.'s parents attended the meeting, and
the Committee concluded that W.B. would be temporarily placed at
Helms Elementary for Extended School Year services.[15]   The ARD
Committee agreed to reconvene "to complete an Annual ARD and review
any additional information from the former school district as well
as any new assessment performed in the interim."[16]   The ARD
Committee also agreed to provide in-home parent training.[17]

On August 20, 2010 the ARD Committee met to develop W.B.'s IEP
for the upcoming school year.[18]  The ARD Committee decided to place
W.B. in a structured learning classroom at the Rice School and to
use the IEP created by the Palo Alto District as the basis for the
HISD's IEP.[19]  At the meeting, W.B.'s parents raised concerns about
his progress, or lack thereof, over the summer.[20]  The Committee
agreed that not all of the teacher aides had been effective in
dealing with W.B., and Winifred Sheridan, a Program Specialist,

---

[14] AR at 171.  An ARD Committee serves to ensure implementation
of the federal regulations for the Individuals with Disabilities
Education Act, and includes the student's parent(s), teacher(s), as
well as administrators and other representatives of the school
district who have knowledge or particular expertise regarding the
provision of services.  19 TEX. ADMIN. CODE § 89.1050.

[15] Id.

[16] AR at 171.

[17] AR at 172.

[18] AR at 229.

[19] AR at 230.

[20] AR at 229.

said that an autism team would be "engaged as soon as possible" to help with instruction and behaviors in W.B.'s new class at the Rice School and that, with supervisor approval, she would arrange for support from an outside contractor to provide resources to work with W.B. while the aides in W.B.'s new class received "appropriate training."[21]

W.B.'s IEP adopted the Palo Alto District's specific areas of need, baseline performance and measurable annual goal on each specific task, with the same short-term objectives toward that goal.[22]   The IEP states that W.B. will receive five hours of reading, four and a half hours of language, five hours of math, five hours of science, five hours of social studies, and half an hour of speech each week in the special education classroom.[23]   It also provides for W.B. to receive five hours of regular education in PE/Technology/Music.[24]   Finally, the IEP states that W.B. will receive 180 minutes of speech-language pathology services, and two and a half hours of occupational therapy over a nine week period.[25] The IEP contains a note stating that "{W.B.] works well in a small

---

[21]   AR at 230.

[22]   AR at 175-228.

[23]   AR at 203.

[24]   Id.

[25]   Id.

setting with one on one instruction,"[26] and the IEP requires a range of staff to student ratios for acquisition of skills, fluency, and generalization from 1:1 to 2:6.[27]  The IEP states that Communication Interventions were necessary, identifying in particular that visual cues were necessary and that naturalistic teaching and integrating communication would be instructional strategies used in addressing W.B.'s communication needs.[28]   The IEP also lists teaching strategies, including naturalistic teaching, structured tasks, visual schedules, task analysis, prompting/prompt fading, consistent classroom routines/expectations, and antecedent and consequence manipulation.[29]

On October 22, 2010, Garrett Henke, a licensed specialist in school psychology, issued a report entitled Review of Existing Evaluation Data, which reviewed the reports from Palo Alto, informal Language Rating Scale and Behavior Rating Scale reports from W.B.'s teacher, and a Parent Information form completed by W.B.'s father, and made a number of recommendations about

---

[26] AR at 208.

[27] AR at 219.  The IEP further provides a range for maintenance of skills from 1:6 to 2:24, and for transitions from 1:1 to 2:24. Id.

[28] AR at 220.

[29] AR at 222.

appropriate teaching strategies for W.B.[30]  Dana Abramezyk, an occupational therapist, conducted an Occupational Therapy Evaluation dated October 15.[31]  The evaluation is based on Abramezyk's observations of W.B. in his classroom, during transition times, and at P.E. and provides detailed descriptions of W.B.'s behavior and suggestions for ways behavioral issues can be addressed, and reached the conclusion that W.B. did not need further occupational therapy to benefit from his education.

On November 22, 2010, the ARD Committee met again.[32]  The description of the meeting show a number of different topics of discussion, including W.B.'s father's observations of W.B.'s classroom, W.B.'s performance in Science Lab, W.B.'s lunch schedule, and a presentation from teacher LaShanda Richards of W.B's work in the structured learning class.[33]  The Committee notes also indicate discussion from Ms. Sheridan about W.B.'s math skills and plans for further data collection on those skills.   The

---

[30] AR at 312-16.  For example, the report recommended that W.B. receive education in a structured learning class, that his unstructured activities should be kept to a minimum, that W.B. requires direct instruction in social skills because he is unlikely to learn these skills from mere exposure to other children, and that teaching strategies associated with Applied Behavior Analysis "may be helpful in maintaining [W.B.'s] motivation to perform and complete tasks."  AR at 318.

[31] AR at 495-99.

[32] AR at 233-36.

[33] AR at 235.

Committee agreed to begin mainstreaming W.B. into the general education math class, in which he would be doing the regular curriculum and then working on his IEPs in the structured learning class.[34] The Committee agreed to increase the in-home parent training from eight to ten hours.[35] The Committee decided to discontinue occupational therapy based on the evaluation described above. W.B.'s father disagreed with the decision regarding occupational therapy, and the Committee agreed to have an independent educational evaluation conducted as to whether W.B. should receive continued Occupational Therapy services.[36]

From January to February, 2011, Nicole Dupré and Amanda Moreno observed W.B. in his structured learning classroom, producing an Augmentative Communication Team report dated February 24.[37] The report discusses W.B.'s ability to read, write, listen, and speak. The report includes input from Ms. Richards and W.B.'s parents.[38] The report also describes a trial session in which W.B. used speech

─────────────────────────

[34] The ARD Committee agreed to mainstream W.B. into general education math at the parents' request and based on their assertion that W.B. effectively mainstreamed into general education math in Palo Alto. The Palo Alto IEP did not include any mention of W.B. attending general education math class. *See* AR at 1315-1316.

[35] Id.

[36] AR at 235. Subsequent steps were taken on this request, and occupational therapy is not the subject of Plaintiff's complaint.

[37] AR at 532-535.

[38] AR at 533.

generating devices, and the report ultimately concludes that such a device would benefit W.B.[39]

The ARD Committee met again on March 3, 2011.[40]  At the meeting, the Committee discussed the Augmentative Communication Team report, and in particular focused on the recommendation that W.B. receive a speech generating device, and discussed use and training on that device.[41] Gregory Jones, a general education math teacher, also spoke about W.B.'s inclusion in his math class.[42] Mr. Jones expressed concern about whether W.B. was benefitting from inclusion in the general education class because W.B. was not able to demonstrate to Mr. Jones that he was grasping any of the material taught in the class.  Mr. Jones stated that he thought W.B. may learn better in a small group.[43]  It came out at the meeting that W.B.'s inclusion in the general education math class was discontinued on February 9, without notice to the parents or the other ARD Committee members.  The Committee agreed to meet again to discuss the failure to abide by procedural safeguards and to determine a remedy for this failure.  At the meeting, W.B.'s father expressed concerns about W.B.'s progress, and requested data

---

[39] AR at 534.

[40] AR at 247.

[41] Id.

[42] Id.

[43] AR at 247.

on W.B.'s progress toward achieving his IEP goals. One of the Committee members said that she would go to the Rice School and compile data on that subject.

The ARD Committee reconvened on March 22, 2011 to resolve the discontinuation of W.B.'s inclusion in general education math without notice to the parents or agreement of the ARD Committee. Compensatory education was offered in the form of two one-hour sessions per week of one-to-one after school tutorials for nine weeks and one two-hour session of one-to-one Saturday tutorials per week for nine weeks. In addition, HISD offered two one-hour sessions during the instructional day of one on one instruction to work toward mastery of the math, reading, and language IEPs to be given by Sonya Pichon, a special education teacher.[44] HISD also offered to conduct the Brigance Comprehensive Inventory of Basic Skills, both immediately to establish a baseline of W.B.'s skills and then again at the end of the school year, to evaluate W.B.'s progress.[45]

The ARD Committee met on May 3, 2011 at the parents' request to discuss behavioral incidents that had occurred.[46] In addition to discussing these incidents and revising the communication procedure to inform parents about behavioral incidents, the

---

[44] AR at 271.

[45] AR at 271.

[46] AR at 278.

Committee agreed to discontinue W.B.'s inclusion in general education math and to stop his after school tutorials.[47]

The Committee met again on June 1, 2011, to discuss W.B.'s progress and his eligibility for Extended School Year services.[48] The Committee discussed the fact that W.B.'s speech and language therapist had been out on medical leave since March 25, 2011, and therefore W.B. had not received his speech therapy services and was eligible for compensatory time.[49]  The Committee reviewed W.B.'s IEPs and agreed that W.B. had regressed on his first Language Arts goals, and on goals five and six.[50]  The Committee discussed possible reasons for regression, and W.B.'s father requested continued one-on-one instruction during the Extended School Year because of its effectiveness and, in addition, wanted compensatory time for the regression due to his belief that W.B. was denied free appropriate public education.[51]  Members of the Committee, except W.B.'s father, agreed that Extended School Year services in a structured learning center would be sufficient to maintain W.B.'s

---

[47] Id.  These decision do not form any part of Plaintiff's complaint.

[48] AR at 293.

[49] Id.

[50] Id.

[51] Id.

skills without one-on-one instruction.[52]  The Committee met again on June 8, 2011, to see if this disagreement could be resolved.[53] W.B. had begun his Extended School Year program the previous day and W.B.'s father stated that W.B. was having a difficult transition and that he wanted more communication from the teacher about W.B.'s behavior and academics.[54]  Chastity Lee-Johnson, the Special Education Program Specialist, said that she would visit Stevenson Elementary, where W.B. was receiving his Extended School Year services, that day to address the father's concerns.[55]  The Committee did not reach any agreement on the one-on-one services and compensation W.B.'s father requested in the previous meeting.

A final ARD Committee Meeting took place on June 22, 2011 to discuss the Independent Educational Evaluation for Occupational Therapy.[56]  The Committee accepted the report and agreed that W.B. would receive two and a half hours of Occupational Therapy services per nine weeks to assist with achieving certain IEP goals, including working with W.B.'s teacher to assist in developing techniques to decrease unwanted sensory behaviors, increase W.B.'s attention to task, and identifying when W.B. needs to calm himself

---

[52] AR at 294.

[53] AR at 301.

[54] Id.

[55] Id.

[56] AR at 309.

and techniques for doing so.[57]  W.B. and his family moved back to Palo Alto before the beginning of the 2011-12 school year.

W.B.'s parents filed a due process hearing request with the Texas Education Agency on June 15, 2011.[58]  The Special Education Hearing Officer ("Hearing Officer") assigned to the due process hearing dismissed their claims and made the following findings:

1.  Student's 2010-11 program and placement were appropriate and provided Student FAPE in the LER. *Cypress-Fairbanks Independent Schoool District v. Michael F.*, 118 F.3d 245 (5th Cir. 1997).

2.  HISD failed to provide Student with Inclusion Math services during the periods of time in which a) he was unilaterally removed from the class, and b) he was not allowed to attend the class on the days his teacher was absent.  HISD offered compensatory services to Student, which were appropriate, accepted by the parent, and delivered in their entirety.  Accordingly, there is no issue of a denial of FAPE related to the Inclusion Math services.

3.  HISD failed to provide Student with speech therapy during the final nine (9) weeks of school year 2010-11.  HISD has offered compensatory services to Student in the amount of three (3) hours of speech therapy.  This offer has been rejected by the parents.  This offer fully compensates Student for the missing speech therapy classes and is appropriate.  Accordingly, there is no issue of a FAPE related to the speech therapy services.[59]

---

[57] Id.

[58] AR at 1.

[59] AR at 21.  "AR" refers to the administrative record.

Plaintiff filed this suit to challenge the first ruling, that W.B. received a free appropriate public education in the least restrictive environment.[60]

## II.  Discussion

### A.  Standard of Review

The Individuals with Disabilities Education Act ("IDEA") requires that school districts must "'(1) provide each disabled child within its jurisdictional boundaries with a 'free appropriate public education' tailored to his unique needs, and (2) assure that such education is offered . . . in the least restrictive environment consistent with the disabled student's needs.'" Houston Indep. Sch. Dist. v. V.P., 582 F.3d 576, 583 (5th Cir. 2009) (quoting Cypress-Fairbanks Indep. Sch. Dist. v. Michael F., 118 F.3d 245, 247 (5th Cir. 1997)).[61]  The District meets these requirements by providing an IEP.  Id.  In Texas, the IEP is developed by an IEP Team called an ARD Committee.  Michael F., 118 F.3d at 247; see also 19 Tex. Admin. Code § 89.1050.  "The 'free appropriate public education' tailored by an ARD Committee and

---

[60] W.B.'s parents do not challenge the compensatory services provided in March 2011 to address withdrawal of W.B. from general education math without Committee approval and notice to the parents, nor do they challenge the offer of compensation for the missed speech therapy classes.  Document No. 11 at 22.

[61] The District is bound to comply with the IDEA as a condition for receipt of federal funding.  Michael F., 118 F.3d at 247.

described in an IEP, however, need not be the best possible one, nor one that will maximize the child's educational potential; rather, it need only be an education that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." Michael F., 118 F.3d at 247-48 (quoting Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley, 102 S. Ct. 3034, 3041-42 (1982)) (emphasis in original).

Under the IDEA, a party may appeal the decision of a Hearing Officer in a due process hearing by filing a civil action in federal or state court. 20 U.S.C. § 1415(i)(2)(2010)); 34 C.F.R. 300.516. In reviewing a due process complaint, the court (1) reviews the administrative records; (2) hears additional evidence at the request of a party;[62] and (3) makes an independent decision based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C) (2010); 34 C.F.R. § 300.516(c); *see also* Michael F., 118 F.3d at 252. Although the court's determination is "independent," the court must give "due weight" to the Hearing Officer's findings. Michael F., 118 F.3d at 252. Moreover, "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy

---

[62] Neither party seeks to supplement the administrative record with additional evidence in this case.

for those of the school authorities which they review." <u>Rowley</u>, 102 S. Ct. at 3051.  When making an independent determination, the court must determine: (1) whether the District has complied with the procedural requirements of the IDEA; and (2) whether the IEP developed through such procedures was "reasonably calculated to enable the child to receive educational benefits." <u>Id.</u>; *see also* <u>Klein Indep. Sch. Dist. v. Hovem</u>, 690 F.3d 390, 396 (5th Cir. 2012).  The burden of proof is on the party seeking relief from the Court, which is W.B. in this case.  <u>Schaffer ex rel. Schaffer v. Weast</u>, 126 S. Ct. 528, 537 (2005).

B.   <u>Analysis</u>

Plaintiff argues that W.B. was denied a free appropriate public education for three quarters of the school year, or until March 2011 when he began receiving one-on-one teaching from Sonya Pichon.[63]  W.B. contends that although the IEP "was appropriately developed in order to provide him with a meaningful education benefit and FAPE; it did not do so because it was not implemented as written."[64]  The gravamen of Plaintiff's case focuses on the parents' dissatisfaction with the instruction W.B. received in the structured learning classroom from teacher LaShanda Richards.

---

[63] Document No. 11 at 6.

[64] <u>Id.</u> at 16.

17

Plaintiff argues that Ms. Richards's implementation of the IEP did not follow the recommended staff/student ratio and did not utilize the teaching strategies included in the IEP.[65]  Regarding the ratios, Plaintiff argues that Ms. Richards should have introduced skills in a one-on-one environment.[66]  While it is mentioned in several places that W.B.'s parents thought W.B. learned skills best in a one-on-one situation, and W.B.'s father testified that this was how W.B. learned skills in Palo Alto, neither the Palo Alto IEP nor the HISD IEP require one-on-one instruction.  There is no allegation much less evidence that the ratios identified in the IEP, which include a range of 1:1 to 2:6 for acquisition of new skills, were violated.  Moreover, Ms. Richards testified that she did work one-on-one with W.B. in acquiring new math skills and in a small group on reading.[67] Furthermore, there was testimony from Candace Floyd, the in-home parent trainer who has worked with autistic children for a number of years, explaining that when a child only acquires skills in a one-on-one setting, the child can have a more difficult time generalizing the skills learned to other situations.[68]  Ms. Richards's decision not to teach all the skills one-on-one

---

[65] Document No. 13 at 4.

[66] Document No. 11 at 4.

[67] AR at 1369-70.

[68] AR at 1241-42.

constitutes a methodological decision, the kind of judgment that educators must make every day and no reason has been shown here for the Court to second-guess that judgment on this record.

Plaintiff further argues more generally that Ms. Richards was not implementing the IEP at all.  While W.B.'s father testified that he did not believe Ms. Richards was implementing the IEP skills but rather was giving W.B. easy tasks to work on to avoid his tantrums and was not using visual schedules, Ms. Richards testified about her work with W.B. on the various IEP goals—how she implemented them and what W.B. was able to do at various points in the year—and she further testified about the use of visual schedules in the classroom.[69]  The Hearing Officer is in the best place to judge the credibility of the witnesses, and the Court gives appropriate due weight to her decision to believe the testimony of the teacher.  Moreover, there is evidence of worksheets completed by W.B. that corroborates Ms. Richards's testimony and demonstrates that W.B. was being taught skills relevant to the IEP.[70]  And finally, Winifred Sheridan and Candace Floyd both testified that they saw W.B. use the visual schedules, and Ms. Sheridan further testified about her support of Ms.

---

[69] AR at 1360-1366.

[70] *See* AR at 716-723 (worksheets related to counting and grouping money); *see also* AR at 696-702 (graphs indicating W.B.'s level of skills on IEP goals).

19

Richards in setting up the classroom and discussing with her how to deal with behaviors like tantrums.[71]

As evidence of Ms. Richards's failure to implement the IEP, Plaintiff points to W.B.'s regression on specific academic skills. The evidence does not clearly demonstrate how much progress W.B. made during the school year.  The ARD Committee notes show apparent agreement that there was regression on three of the IEP goals, but does not specifically identify how much progress was made on the others.  The Brigance Tests conducted in March and May 2011 indicate progress in several areas during that interval,[72] but those results are more helpful for analyzing a future course for W.B.'s education than for determining whether the IEP was implemented for the first three quarters of the school year.  W.B.'s father testified at the hearing that he believed that W.B. had regressed in terms of academic skills, focusing in particular on one of the math IEP goals regarding addition and subtraction.  The evidence shows that W.B. was not able to demonstrate some skills that the Palo Alto IEP indicated he had already mastered, like two-digit subtraction, for example.  Sample worksheets from March 2011 show that W.B. was unable to do two-digit subtraction; however, the worksheets also show W.B.'s progress in being able to perform

---

[71] AR at 1293-96; 1237-38.

[72] AR at 322-26.

three-digit addition.[73]  Ms. Richards testified that she had been able successfully to work with him on addition but could not get him to do subtraction without behavioral incidents.[74]  There was testimony that it is common for individuals with autism at times to demonstrate the performance of skills that in some other environments they are unable to do.[75]  While the evidence does not conclusively demonstrate the cause or causes of W.B.'s fluctuation in his ability to demonstrate skills like math, there is evidence of many factors that well may have played a role in his uneven manifestation of his skill levels, such as his sudden and unplanned move to Houston, his mother's serious illness, the new school, new teachers, new classroom, and new teaching methods.  Especially in light of the stressful environmental changes encountered by this nine-years-old child during this one-year period, the Court finds from a preponderance of the evidence that any lack of progress in the advancement of W.B.'s education was not attributable to a failure by Ms. Richards to implement the IEP.  *See* <u>Samuel Tyler W.</u>

---

[73] AR at 704-05.

[74] AR at 1366.  Overall, W.B.'s behavior is a major issue; Ms. Richards testified that W.B.'s behavior fluctuated throughout the year, was better on some days than others and though it improved in the middle of the year, worsened at the end of the year.  AR at 1367.

[75] AR at 1227-28, 1242.  This testimony comes from Candace Floyd, who also provided the in-home parent training and observed W.B.'s behavior on a number of occasions and noted that generalization and transitions were difficult for him.  AR at 1228.

ex rel. Harvey W. v. Nw. Indep. Sch. Dist., 202 F. Supp. 2d 557,
559 (N.D. Tex. 2002) ("The law can only mandate equal opportunity,
not equal results.  No school can guarantee that an IEP will be
successful.") (citations omitted).

Plaintiff has failed to show by a preponderance of the
evidence that W.B.'s teachers were not educating W.B. in accordance
with the IEP.  To the contrary, the evidence shows that W.B.'s
teachers, and in fact all of the members of the ARD Committee, were
interested and involved in helping W.B. to progress both
academically and behaviorally.  The Committee meeting notes show
engagement from all of the parties to advance W.B.'s education and
a willingness to listen and address concerns of W.B.'s parents.
The Committee immediately addressed mistakes, such as W.B.'s
removal from general education without Committee approval and
notice to parents and the failure to give speech therapy because of
the teacher's medical leave, and offered appropriate compensation
for those failures.  The Committee arranged for testing and
evaluations throughout the school year to ensure that it was
addressing W.B.'s needs.  The evidence fails to establish that W.B.
was denied a free appropriate public education.

III.  Order

Based on the foregoing, it is

22

ORDERED that Plaintiff W.B. b/n/f Jason B. and Jennifer B.'s Motion for Summary Judgment (Document No. 11) is DENIED, and Defendant Houston Independent School District's Motion for Summary Judgment (Document No. 10) is GRANTED, and all of Plaintiff's claims are DISMISSED with prejudice.

The clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas on this 30th day of November, 2012.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE